[Cite as *Green v. CDO Technologies, Inc.*, 2021-Ohio-1603.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| VERONICA GREEN | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28951 |
| | : | |
| v. | : | Trial Court Case No. 2019-CV-5742 |
| | : | |
| CDO TECHNOLOGIES, INC. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of May, 2021.

. . . . . . . . . . .

DAVID M. DUWEL, Atty. Reg. No. 0029583, 130 West Second Street, Suite 2101, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

MICHAEL S. GLASSMAN, Atty. Reg. No. 0012713 and CHRISTOPHER M. JONES, Atty. Reg. No. 0097556, 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202
        Attorneys for Defendant-Appellee

. . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Veronica Green appeals from an order of the Montgomery County Court of Common Pleas, which dismissed her breach of contract claim against her former employer, CDO Technologies, Inc. ("CDO"). We affirm the judgment of the trial court.

**{¶ 2}** Green formerly was employed by CDO until February 2013, when CDO terminated her employment. After the termination, Green filed a lawsuit alleging various employment claims with respect to her termination. In March 2014, Green and CDO entered into a settlement agreement, and they agreed to dismiss the lawsuit with prejudice. Among other things, the settlement agreement required that CDO pay Green $45,000 and provide Green with a letter stating that her position "was eliminated due to a reduction in force" and describing her roles and responsibilities with the company. The settlement agreement did not include any provision prohibiting CDO or any of its employees from making disparaging or negative statements about Green; however, the agreement did preclude Green from making disparaging or negative statements about CDO.

**{¶ 3}** Green filed a complaint against CDO on December 3, 2019, alleging that CDO had breached the settlement agreement by providing "false and erroneous statements" about Green to third parties with respect to her employment with CDO. Green alleged that she had suffered damages and that her reputation in the community had been harmed by CDO's actions. Green asserted that she had fully complied with her obligations under the settlement agreement. A copy of the settlement agreement was attached to the complaint, along with a copy of the letter that CDO agreed to execute regarding Green's employment and the reason for her dismissal. On January 29, 2020, CDO filed a motion to dismiss the complaint for failure to state a claim upon which relief

could be granted.

{¶ 4} On February 12, 2020, Green filed an amended complaint; again, the settlement agreement and the "letter of recommendation which was part of the promised consideration" were attached. The amended complaint stated that CDO "agreed to provide its letter of recommendation for [Green] so she could utilize it in securing future employment with other employers"; the letter stated that she lost her position with CDO due to a reduction in force, described that she held several important positions with the company, and said that she had performed key duties and was responsible for a variety of tasks. Green alleged in the amended complaint that, after the execution of the settlement agreement, CDO nonetheless "published false and erroneous statements about [Green] in respect to her employment with [CDO] to third parties/potential employers," which made "meaningless" the consideration (the letter of recommendation) provided to Green pursuant to the settlement agreement.

{¶ 5} CDO filed a motion to dismiss Green's amended complaint on February 26, 2020. CDO's motion to dismiss asserted that Green's amended complaint did "absolutely nothing to cure the defect" in her original complaint, which Green implicitly acknowledged by filing an amended complaint rather than responding to CDO's motion to dismiss. According to CDO, Green's amended complaint still did not identify a single provision in the settlement agreement that CDO had breached by its alleged actions. According to CDO, Green alleged that CDO breached the provision requiring it to provide the letter of recommendation "by making disparaging, negative, erroneous, or false statements about her," but even assuming that the allegations in Green's amended complaint were true, neither the provision cited by Green nor any other provision in the

settlement agreement stated that CDO could not make negative statements about Green. Thus, CDO asserted that Green had not stated a breach of contract claim upon which relief could be granted, because the facts she alleged, even if true, did not support her legal conclusion that CDO had breached the settlement agreement.

{¶ 6} In her response to the motion to dismiss, Green characterized the letter of recommendation as "very positive" and stated that her purpose in demanding the letter as part of the settlement agreement was "to ensure that the hostility surrounding her termination from CDO did not carry over into the future."  She argued that, after the parties executed the settlement agreement, she discovered to her dismay that a "key CDO manager" with whom she had "battled" during her employment with CDO was "doing exactly what she [had tried] to eliminate by obtaining the letter of recommendation," namely, he was "publishing and uttering false and erroneous statements about [her] employment with CDO to third parties and [her] potential employers."  For this reason, she claimed that she was deprived of part of her bargain with CDO to "a smooth transition to the future."  She asserted that the disparaging comments significantly reduced the value of the letter that was part of the consideration for the settlement agreement. Green asserted that her reputation in the industry "had been compromised and tarnished" and that CDO had "reneged" on its promise. Green contended that she would never have agreed to settle her employment dispute with CDO if she had known that it did not intend "to give full faith and credit" to the statements in the letter of recommendation, and that she should have an opportunity "to testify and provide information obtained in discovery to prove how valuable this letter of recommendation was" to her.

{¶ 7} Specifically, Green referred the court to section 2 of the settlement

agreement, which listed as consideration for the agreement three separate $15,000 payments to Green and her attorney and the "letter of reference depicted at Exhibit B." Green argued that, if CDO had failed to make one of the $15,000 payments, she could have brought an action for breach of the agreement, so its "failure to provide a meaningful letter of recommendation" by making disparaging comments about her should likewise be viewed as breach of the agreement. In conclusion, Green asserted that CDO made "an illusionary promise" to her, then intentionally took it back, "devalu[ing] the consideration" it gave for the settlement agreement.

{¶ 8} On October 6, 2020, the trial court sustained CDO's motion to dismiss. The court found that, construing the amended complaint in the light most favorable to Green, she could prove no set of facts entitling her to relief. The court declined to consider evidence about discussions between Green and CDO in reaching the terms of the settlement agreement, because it found that the agreement was "fully integrated" and represented the entirety of the agreement. The court also found that there were no ambiguous terms that required the consideration of extrinsic evidence.

{¶ 9} Specifically, the court found that Green could not prove that CDO had breached the settlement agreement because the non-disparagement clause applied only to Green, and the court found that disparaging statements made by CDO about Green were not prohibited. The court rejected Green's argument that any such statements by CDO "violate[d] the consideration it contracted to provide"; CDO paid Green the promised $45,000 and furnished the letter of recommendation that was referred to as part of CDO's "consideration," and thus had satisfied its obligations. Because the agreement did not include a non-disparagement obligation on the part of CDO, CDO had not breached the

agreement.

{¶ 10} Green appeals from the trial court's judgment, raising one assignment of error:

> THE TRIAL COURT ERRED WHEN IT SUSTAINED CDO'S MOTION TO DISMISS AND DISMISSED VERONICA GREEN'S AMENDED COMPLAINT WITH PREJUDICE.

{¶ 11} Green asserts that the trial court's conclusion that there was no non-disparagement clause that applied to CDO was central to its resolution of the case, but that in reaching this conclusion, the trial court "directly or indirectly considered extrinsic evidence outside of the four corners" of the settlement agreement. She also asserts that the trial court erred "when it failed to consider [her] argument that part of the consideration bargained for in the Settlement Agreement was [CDO's] letter of recommendation," and that CDO's agreement to provide her with "a positive letter of reference" was "totally muted and of no value" if CDO were otherwise permitted to make disparaging comments about her. Green argues that the trial court "misse[d] the critical point" of her argument that, by undercutting the value of the letter by making disparaging comments about her, CDO nullified part of her bargained-for consideration, which constituted a breach. Green contends that neither her agreement not to disparage CDO nor the absence of a "similar clause running in [her] favor" was relevant to the issue that CDO made "an illusory promise" to her, which it later rendered meaningless.

{¶ 12} CDO responds that Green's amended complaint does not allege that it failed to provide all of the consideration required by the settlement agreement, including the letter. CDO also asserts that only Green had a contractual non-disparagement

obligation pursuant to the settlement agreement; the agreement did not include any provision prohibiting CDO or its employees from making disparaging or negative statements about Green.

{¶ 13} CDO also asserts that Green's brief contends – inconsistently – both that the trial court erred because it purportedly considered extrinsic evidence, directly or indirectly, in concluding that the settlement agreement lacked a no-disparagement provision applicable to CDO and that the trial court erred "when it failed to read unwritten purported obligations" into the settlement agreement that were "not contained in the fully integrated Settlement Agreement." CDO asserts that Green incorrectly claims that CDO's obligation to provide the original letter also constituted an unwritten obligation not to disparage Green. According to CDO, the trial court properly considered "only the plain language" of the agreement in concluding that Green could not establish her breach of contract claim even if all facts alleged in the amended complaint were true; the court did not consider and should not have considered extrinsic evidence, because all of the obligations of the parties were expressly spelled out and contained in the separation agreement, and those obligations did not prohibit CDO from disparaging Green.

{¶ 14} CDO asserts that the trial court considered and rejected Green's argument that CDO had not provided the consideration it was obligated to provide pursuant to the settlement agreement, because there was no unwritten non-disparagement obligation on CDO. CDO asserts that the trial court properly concluded that CDO's only obligations – payment of money and provision of the letter – had been satisfied.

{¶ 15} In reply, Green repeats her assertions that CDO undercut the value of the letter by making derogatory comments, thereby depriving her of consideration for which

she had bargained. Green denies that she asked to trial court to read additional, unwritten terms into the settlement agreement or to incorporate a non-disparagement clause that clearly does not exist "within the four corners of the document," Green asserts that she should be allowed to present evidence that CDO's actions subsequent to the agreement breached the agreement.

{¶ 16} This Court has previously noted:

A motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Civ.R. 12(B)(6), "is procedural and tests the sufficiency of the complaint." *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548, 605 N.E.2d 378 (1992); *Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 16 (2d Dist.). The court must construe the complaint in the light most favorable to the plaintiff, presume all of the factual allegations in the complaint are true, and make all reasonable inferences in favor of the plaintiff. *Grover* at ¶ 16, citing *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192, 532 N.E.2d 753 (1988). A motion to dismiss under Civ.R. 12(B)(6) should be granted only where the complaint, so construed, demonstrates that the plaintiff can prove no set of facts entitling him to relief. *Sherrod v. Haller*, 2017-Ohio-5614, 94 N.E.3d 148, ¶ 6 (2d Dist.). "The standard for dismissal under Civ.R. 12(B)(6) is consistent with Civ.R. 8(A), which requires that a complaint 'contain * * * a short and plain statement of the claim [or claims] showing that the [plaintiff] is entitled to relief.' " *Toney v. Dayton*, 2017-Ohio-5618, 94 N.E.3d 179, ¶ 36 (2d Dist.).

"An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Duer v. Henderson*, 2d Dist. Miami No. 2009 CA 15, 2009-Ohio-6815, ¶ 68, quoting *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. This means the appellate court "must independently review the complaint to determine whether dismissal is appropriate." *Boyd v. Archdiocese of Cincinnati*, 2d Dist. Montgomery No. 25950, 2015-Ohio-1394, ¶ 13, quoting *Ament v. Reassure Am. Life Ins. Co.*, 180 Ohio App.3d 440, 2009-Ohio-36, 905 N.E.2d 1246, ¶ 60 (8th Dist.).

In conducting that review, we are "bound to assume that the facts pleaded in the complaint are true, but the same does not apply to conclusions of law that the pleader contends are proved by those facts." *Thomas v. Progressive Cas. Ins. Co., Inc.*, 2011-Ohio-6712, 969 N.E.2d 1284, ¶ 8 (2d Dist.). We are not to consider "unsupported conclusions that may be included among, but not supported by, the factual allegations of the complaint." *Boyd* at ¶ 13, quoting *Wright v. Ghee*, 10th Dist. Franklin No. 01AP-1459, 2002-Ohio-5487, ¶ 19.

Although the rule itself states that matters to be considered on a Civ.R. 12(B)(6) motion are limited to those that appear within the relevant pleading, material incorporated within a complaint is part of that pleading. *Boyd* at ¶ 14, citing *State ex rel. Crabtree v. Franklin Cty. Bd. of Health*, 77 Ohio St.3d 247, 249, 673 N.E.2d 1281, fn. 1, (1997) ("Material incorporated in a complaint may be considered part of the complaint for purposes of

determining a Civ.R. 12(B)(6) motion to dismiss."). Such material includes not only exhibits to a complaint, but also written instruments "upon which a claim is predicated," regardless of whether such material actually is attached to the pleading. *Id.*

*Williams v. Dayton Water*, 2020-Ohio-4332, 158 N.E.3d 654, ¶ 10-13 (2d Dist.).

{¶ 17} This Court has further noted:

"[A] settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and * * * such agreements are valid and enforceable by either party." (Citations omitted.) *Continental W. Condominium Unit Owners Assn. v. Howard E. Ferguson, Inc.,* 74 Ohio St.3d 501, 502, 660 N.E.2d 431 (1996). The law highly favors settlement agreements. *Id.*

"Settlement agreements are essentially a contract and are governed by the law of contracts. To establish a breach of a settlement agreement, the party alleging the breach must prove: 1) existence of the Settlement Agreement, 2) performance by the plaintiff, 3) breach by the defendant, 4) resulting damages or loss to the plaintiff." (Citation omitted.) *Raymond J. Schaefer, Inc. v. Pytlik,* 6th Dist. Ottawa No. OT-09-026, 2010-Ohio-4714, ¶ 24.

*Kilroy v. Peters*, 2d Dist. Montgomery No. 25547, 2013-Ohio-3384, ¶ 36-37.

{¶ 18} Further:

"The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties."

(Citation omitted.) *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St.3d 353, 361, 678 N.E.2d 519 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. "Under such circumstances, a court may not go beyond the plain language of the agreement to determine the parties' rights and obligations, and it may not consider parole [sic] evidence of the parties' intentions." (Citations omitted.) SFJV 2005, *L.L.C. v. Ream*, 187 Ohio App.3d 715, 2010-Ohio-1615, 933 N.E.2d 819, ¶ 22 (2d Dist.).

"The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini,* 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 *Williston on Contracts,* Section 33:4, at 569-570 (4th Ed. 1999). "Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction. * * * 'The parol evidence rule is a rule of substantive law which, when applicable, defines the limits of a contract.' " *Id.,* quoting *Charles A. Burton, Inc. v. Durkee,* 158 Ohio St. 313, 324, 109 N.E.2d 265 (1952), paragraph one of the syllabus.

In *Galmish,* the court further explained that:

"The parol evidence rule, as is now universally recognized, is not

a rule of evidence but is one of substantive law. It does not exclude evidence for any of the reasons ordinarily requiring exclusion, based on the probative value of such evidence or the policy of its admission. The rule as applied to contracts is simply that as a matter of substantive law, a certain act, the act of embodying the complete terms of an agreement in a writing (the 'integration'), becomes the contract of the parties. The point then is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations."

*Galmish* at 27, 734 N.E.2d 782, quoting *In re Gaines' Estate,* 15 Cal.2d 255, 264-265, 100 P.2d 1055 (1940).

An "integration" for purposes of the parol evidence rule "is '[t]he full expression of the parties' agreement, so that all earlier agreements are superseded, the effect being that neither party may later contradict or add to the contractual terms.' " *Williams v. Spitzer Autoworld Canton, L.L.C.,* 122 Ohio St.3d 546, 2009-Ohio-3554, 913 N.E.2d 410, ¶ 28 (Cupp, J., concurring), quoting *Black's Law Dictionary* 880 (9th Ed. 2009). "If an

integration is a 'complete integration,' then it fully expresses the intent of the parties, and parol evidence is inadmissible. * * * On the other hand, if an integration is a 'partial integration,' then it does not fully express the parties' intent, and '[p]arol (extrinsic) evidence is admissible to clear up ambiguities with respect to the terms that are not integrated.' " *Id.,* quoting *Black's* at 880.

"A contract that appears to be a complete and unambiguous statement of the parties' contractual intent is presumed to be an integrated writing." (Citations omitted.) *Bellman v. Am. Internatl. Group,* 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶ 11. "The question of partial integration must be determined from the four corners of the document itself * * *. Furthermore, in the case of a partial integration, only consistent additional terms may be added, not inconsistent terms." (Citation omitted.) *TRINOVA Corp. v. Pilkington Bros., P.L.C.,* 70 Ohio St.3d 271, 276, 638 N.E.2d 572 (1994).

*PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2015-Ohio-3386, 41 N.E.3d 145, ¶ 16-20 (2d Dist.).

{¶ 19} The settlement agreement described the parties' past employment relationship and the lawsuit that arose from the termination of that relationship, which they sought to resolve through the settlement agreement. It then stated:

NOW THEREFORE, in consideration of the mutual promises and valuable consideration described below, the parties agree as follows:

* * *

2. **Consideration**

After CDO's receipt of the original of this Settlement Agreement and General Release signed by Green, the Agreed Entry of Dismissal with Prejudice for the Lawsuit signed by Green's attorney, and completed IRS forms W-9 from Green and her counsel, CDO shall pay or cause to paid to Green the total gross amount of Forty Five Thousand Dollars ($45,000) and other consideration as set below, as follows:

* * *

d.   The original of the letter attached hereto as Exhibit [B].

* * *

6. **Settlement of All Claims**.   Green acknowledges and agrees that the consideration provided as set forth herein constitutes full, final and complete satisfaction of any and all CLAIMS against CDO and RELEASEES including but in no way limited to, CLAIMS which exist or which may exist based on or in any way arising under or relating to Green's employment with CDO or her termination therefrom.

7. **No Admission**.   Green acknowledges and agrees that CDO and all RELEASEES have consistently disputed and continue to dispute the merit of her CLAIMS.   * * * CDO and RELEASEES specifically deny and disclaim any liability, discrimination or harassment against Green and by entering into this Settlement Agreement and General Release intend merely to resolve any and all differences in an amicable and economical way.

* * *

10. **No Disparagement**. Green shall not make any disparaging or negative statements about CDO or any of the RELEASEES to any person or entity, including but not limited to any past, present or prospective customer of CDO. Neither Green [n]or anyone on her behalf, nor her attorney, shall communicate, orally or in writing, with any print or other public media about any matter arising out of her employment with CDO, the termination thereof, the Lawsuit, or this Agreement.

* * *

16. **Entire Agreement**. This Agreement sets forth the entire agreement by and between Green and CDO and supersedes any and all prior agreements and understandings, whether written or oral, between them * * *. This Agreement shall not be modified except by written agreement duly executed by or on behalf of each of the parties hereto. This Agreement shall be governed by and construed in accordance with the law of the State of Ohio. * * *

17. **Miscellaneous**. Green acknowledges that she is fully able and competent to enter into this Agreement, that she has read this Agreement in its entirety, that she had an opportunity to, and did, in fact, review it with her attorney, and that her agreement to all of its provisions is made freely, voluntarily, and with full and complete knowledge and understanding of its contents. Green also acknowledges and agrees that, in signing this Agreement, she has not relied upon any representations made by CDO with regard to the subject matter, basis, or tax consequences of the character or

treatment of the settlement payments hereunder, or effect of this Agreement or otherwise, other than the obligations of the parties set forth in this Agreement.

**{¶ 20}** Exhibit B to the settlement agreement was a copy of the letter that CDO was required to execute as consideration for the agreement. The letter stated:

To Whom It May Concern:

Veronica Green was employed by CDO Technologies, Inc. from November 17, 1997 until February 19, 2013, when her position was eliminated as part of a reduction in force. During her employment with CDO, Ms. Green held several important positions with the Company, including Program Manager, Operations Manager, Senior Operations Manager, and Director, Government Services Operations. The last position Ms. Green held with CDO was Director of Operations MS/IA. Ms. Green's duties and responsibilities in that position included requiring her to manage multiple concurrent government and commercial contracts with multi-million dollar cumulative budgets, to develop customer partnerships with respect to program/project performance meeting customer expectations and key business objectives, and to manage day-to-day operations and core functions of aspects of CDO's government service business to maintain operational excellence. Ms. Green possesses and displayed sound technical skills and her performance in a number of critical areas was above the Company's normal expectations for the position.

**{¶ 21}** As we must, we presume that the allegations in Green's complaint are true,

namely that CDO "published false and erroneous statements about [her] in respect to her employment with [CDO] to third parties/potential employers." As noted by the trial court, the settlement agreement, by its express terms, was a fully integrated agreement that reflected the parties' intent. There is no dispute that Green received the consideration set forth in the contract in exchange for the dismissal of her claims against CDO, namely $45,000 and an executed version of the letter set forth at Exhibit B. While Green argues that the letter was reduced to a "nullity" by CDO's subsequent conduct in disparaging her, the settlement agreement did not contain a "no disparagement" clause applicable to CDO. Green agreed to the terms of the settlement agreement as written, and the trial court correctly declined to afford the settlement agreement a construction beyond its own plain language. In other words, Green failed to establish that CDO had breached the settlement agreement, and the trial court correctly found that there was no basis for a claim that CDO had breached the agreement. Thus, the trial court properly granted CDO's motion to dismiss.

**{¶ 22}** Green's assignment of error is overruled.

**{¶ 23}** The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J. and EPLEY, J., concur.

Copies sent to:

David M. Duwel
Michael S. Glassman
Christopher M. Jones
Hon. Michael W. Krumholtz